# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

GERALD FORSBURG, et al.,

        Plaintiffs,

    v.

WELLS FARGO & CO. and
WELLS FARGO BANK, N.A.,

        Defendants.

Case No. 5:20-cv-00046

## MEMORANDUM IN SUPPORT OF DEFENDANTS
## WELLS FARGO & CO.'S AND WELLS FARGO BANK, N.A.'S
## <u>MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

INTRODUCTION ...................................................................................................................... 1

FACTUAL ALLEGATIONS ..................................................................................................... 4

I.      WELLS FARGO'S LENDING BUSINESS AND THIS LAWSUIT ............................... 4

II.     THE ALLEGATIONS RELATING TO THE NAMED PLAINTIFFS ........................... 6

       A.      Forsburg's Mortgage Loan ................................................................................ 6

       B.      Doctor's Mortgage Loan ................................................................................... 8

       C.      The Castros' Mortgage Loan ............................................................................ 8

       D.      Prado's Mortgage Loans ................................................................................. 10

LEGAL STANDARD ............................................................................................................. 12

ARGUMENT ......................................................................................................................... 12

I.      THE CLAIM FOR VIOLATION OF TILA AND RESPA (COUNT III)
       SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK A PRIVATE
       RIGHT OF ACTION, DO NOT ALLEGE HAVING SENT A NOTICE OF
       ERROR, AND DO NOT ALLEGE COGNIZABLE DAMAGES ............................... 12

       A.      Plaintiffs Have No Private Right of Action for Violation of 12 C.F.R.
            § 1024.35(b)(3) Under RESPA ...................................................................... 14

       B.      Plaintiffs' 12 C.F.R. § 1024.36(b)(3) Claim Also Fails Because Plaintiffs
            Have Not Alleged That They Complied with RESPA's Pre-Suit
            Requirement of Submission to Wells Fargo of a Notice of Error ...................... 14

       C.      Plaintiffs Do Not Allege Cognizable Damages. .............................................. 16

II.     THE VIRGINIA COMMON LAW CIVIL CONSPIRACY AND BUSINESS
       CONSPIRACY CLAIMS (COUNTS V AND VI) MUST BE DISMISSED
       BECAUSE THEY ARE NOT PLEADED WITH PARTICULARITY AND DO
       NOT ALLEGE AN INDEPENDENT TORT .............................................................. 17

III.    PLAINTIFFS' RICO CLAIM (COUNT I) SHOULD BE DISMISSED
       BECAUSE THE TAC DOES NOT ADEQUATELY ALLEGE AN
       ENTERPRISE, A PATTERN OF RACKETEERING ACTIVITY, OR INJURY. ........ 19

       A.      Plaintiffs Have Failed to Plead a Criminal Enterprise As Required to State
            a Claim for Violation of 18 U.S.C. § 1962(c) ................................................. 19

       B.      The TAC Fails to Plead That Wells Fargo Engaged in a Pattern of
            Racketeering Activity. .................................................................................... 21

       C.      The TAC Lacks Sufficient Allegations of Proximate Cause. ........................... 23

i

IV.    PLAINTIFF'S FRAUD CLAIM (COUNT II) AND GROSS NEGLIGENCE CLAIM (COUNT XII) SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY THE ECONOMIC LOSS DOCTRINE, AND THE FRAUD CLAIM IS NOT PLEADED WITH PARTICULARITY AND FAILS TO PLEAD FACTS TO SUPPORT DETRIMENTAL RELIANCE. ................................... 25

    A.    The Economic Loss Doctrine Bars the Tort Claims. ............................................ 25

    B.    The Fraud Claim Is Not Pleaded with Particularity............................................. 26

V.    PLAINTIFFS' TEXAS DEBT COLLECTION ACT (COUNT VII), FLORIDA CONSUMER COLLECTIONS PRACTICES ACT (COUNT VIII), GROSS NEGLIGENCE (COUNT XII), AND DEFAMATION (COUNT XIII) CLAIMS FAIL BECAUSE THEY ARE EXPRESSLY PREEMPTED...................................... 28

    A.    Section 1681h(e) Preempts Plaintiffs' Defamation And Gross Negligence Claims. ........................................................................................................ 28

    B.    Section 1681t(b) Preempts the TDCA And FCCPA Claims. .............................. 30

VI.    THE TDCA CLAIM SHOULD BE DISMISSED BECAUSE WELLS FARGO IS NOT A DEBT COLLECTOR. ......................................................................................... 32

VII.    PLAINTIFFS' CCCRAA CLAIM SHOULD BE DISMISSED BECAUSE THE TAC FAILS TO ALLEGE ACTUAL DAMAGES.......................................................... 33

VIII.    PLAINTIFFS' CALIFORNIA ROSENTHAL ACT CLAIM SHOULD BE DISMISSED BECAUSE THE CONCEPT OF NON-CONSENSUAL FORBEARANCE DOES NOT FIT WITHIN ANY OF THE PROHIBITED PRACTICES LISTED IN THE FAIR DEBT COLLECTION PRACTICES ACT........ 34

IX.    PLAINTIFFS' BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE THERE IS NO PRIVITY BETWEEN WELLS FARGO AND PLAINTIFFS, AND PLAINTIFFS FAIL TO IDENTIFY COGNIZABLE DAMAGES..................................................................................................................... 36

    A.    There Is No Privity of Contract Between the Parties........................................... 36

    B.    Plaintiffs Fail to Identify Cognizable Damages................................................... 37

X.    PLAINTIFFS' DEFAMATION CLAIM FAILS BECAUSE THEY DO NOT ALLEGE THE SPECIFIC STATEMENTS MADE, TO WHOM THEY WERE MADE, OR WHEN THEY WERE MADE. .................................................... 39

XI.    PLAINTIFFS' CLAIMS FOR ATTORNEYS' FEES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF SHOULD BE DISMISSED BECAUSE REMEDIES ARE NOT PROPERLY PLEADED AS INDEPENDENT CLAIMS........ 40

XII.    WELLS FARGO & CO. SHOULD BE DISMISSED BECAUSE PLAINTIFF'S ALLEGATIONS HAVE NOT PLEADED FACTS TO PIERCE THE CORPORATE VEIL............................................................................................................ 41

CONCLUSION........................................................................................................................ 41

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Aliff v. Bank of Am., N.A.*, No. 3:16-10119, 2017 WL 424878 (S.D.W.V. Jan. 31, 2017) ............................................................................................................13

*Andrews v. Plains All Am. Pipeline, L.P.*, Case No. CV 15-4113 PSG, 2017 WL 10543401 (C.D. Cal. Aug. 25, 2017)..................................................................25, 26

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)................................................23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................12, 28

*Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998) .............................36

*Banga v. Experian Info. Sols., Inc.*, No. C 09-04867 SBA, 2013 WL 5539690 (N.D. Cal. Sept. 30, 2013)....................................34

*Bank of Am., N.A. v. Zaskey*, No. 9:15-cv-81325, 2016 WL 2897410 (S.D. Fla. May 18, 2016)........................................................................................................36

*Barnes v. Carrington Mortg. Servs., LLC*, No. 15-cv-6465, 2016 WL 3018693 (D.N.J. May 24, 2016) .....................................................................................13

*Basic Cap. Mgmt. v. Dynex Com., Inc.*, 348 S.W.3d 894 (Tex. 2011) .........................39

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483 (E.D. Va. 2003)...................................................................................................17

*Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313 (4th Cir. 1998)...........................................................................................................25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................12, 23

*Bernstein v. Wells Fargo & Co.*, No. 1:18-cv-02887-RWS-CMS, 2018 WL 7018007 (N.D. Ga. Nov. 28, 2018)....................................................................15

*Bevins v. Partridge, Jones & Assocs., Ltd.*, 22 Va. Cir. 334 (1990)............................38

*Blankenship v. Consolidation Coal Co.*, 850 F.3d 630 (4th Cir. 2017)........................40

*Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841 (E.D. Va. 2016) .................40

*Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10cv670, 2012 WL 5404084 (E.D. Va. Nov. 5, 2012).....................................................................................31

*Boyle v .United States*, 556 U.S. 938 (2009) .............................................................20

iii

*Brandon v. Wells Fargo Bank, N.A.*, No. 13-18-00393-CV, 2020 WL 2776714 (Tex. App. Ct. May 28, 2020) ................................................................................. 36

*Brown v. Bank of N.Y. Mellon*, No. 1:16-cv-194, 2016 WL 2726645 (E.D. Va. May 9, 2016) ..................................................................................................... 14

*Connor v. First Student, Inc.*, 5 Cal. 5th 1026 (2018) .................................................. 34

*LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234 (Tex. 2014) ................. 26

*C.F. Tr., Inc., v. First Flight Ltd. P'ship*, 306 F.3d 126 (4th Cir.2002) ...................... 41

*CBH Equity, LLC v. Murphy Oil USA, Inc.*, 333 F. Supp. 3d 664 (S.D. Tex. 2018) ... 27

*Cervantes v. U.S. Bank Nat'l Ass'n*, Civ. A. No. 3:12-CV-0661-D, 2012 WL 1605558 (N.D. Tex. May 8, 2012) ................................................................... 33

*Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261 (Va. 1995) ................ 19

*Conder v. Home Savings of Am.*, 680 F. Supp. 2d 1168 (C.D. Cal. 2010) .................. 37

*Crenshaw v. Sarasota Cnty. Pub. Hosp. Bd.*, 466 So.2d 427 (Fla. 2d DCA 1985) ...... 38

*Cruz v. Bank of Am., N.A.*, No. 3:19-CV-340-M-BN, 2020 WL 4561855 (N.D. Tex. July 10, 2020)  *R & R adopted by* 2020 WL 4569042 (N.D. Tex. Aug. 7, 2020). .......................................................................................................... 32

*Darton Eny'tal, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022 (W.D. Va. 2018) ...................................................................................................... 18

*Davis v. Hudgins*, 896 F. Supp. 561 (E.D. Va. 1995), *aff'd* 87 F.3d 1308 (4th Cir. 1996) ...................................................................................................... 21

*Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870 (S.D. Tex. 2013); *on reconsideration*, No. 6:11-CV-00047, 2014 WL 585403 (S.D. Tex. Feb. 14, 2014) ...................................................................................................... 31

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269 (4th Cir. 2019) .......... 12

*Deauville Hotel Mmgt., LLC v. Ward*, 219 So.3d 949 (Fla. 3d DCA 2017) ................. 37

*Doe v. Sutton-Wallace*, No. 3:18-cv-41, 2019 WL 2061969 (W.D. Va. May 9, 2019) ...................................................................................................... 12

*Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313 (Va. 2014) .................... 19

*Dwoskin v. Bank of Am.*, 850 F. Supp .2d 557 (D. Md. 2012) ..................................... 40

*Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006 (D. Minn. 2013) ................ 29

*Englert v. Nationstar Mortg., Inc.*, Case No. 1:15-cv-303, 2015 WL 9275662
(E.D. Va. Dec. 18, 2015) ................................................................................................36

*Filak v. George*, 594 S.E.2d 610 (Va. 2004) .....................................................................26, 37

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451 (S.D.N.Y.
2014) .........................................................................................................................24

*Flip Mortg. v. McElhone*, 841 F.2d 531 (4th Cir. 1998)..................................................22

*Flores v. Collection Consultants of Cal.*, No. SACV 14-771-DOC, 2015 WL
4254032 (C.D. Cal. Mar. 20, 2015) ..................................................................................35

*Frye v. Cap. One Auto Fin.*, No. 1:15-CV-20530, 2015 WL 3540445 (S.D. Fla.
June 3, 2015).............................................................................................................31

*Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006) .............................................................19

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016)....................................5

*Golf Ranch Resort Motel, Inc. v. TarHeel Mortg. Co.*, 341 F. Supp. 846 (E.D. Va.
1972) .........................................................................................................................28

*Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004) ................17

*In re Griffin*, No. 10-22431-RDD, 2010 WL 3928610 (Bankr. S.D.N.Y. Aug. 31,
2010) .........................................................................................................................16

*Guido v. Koopman*, 2 Cal. Rptr. 2d 437 (1991)..............................................................27

*Harris v. Richmond Motor Co., Inc.*, 26 Va. Cir. 403 (1974)..........................................38

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)...............22

*Healy v. Chesapeake Appalachia, LLC*, No. 1:10-CV-00023, 2011 WL 24261
(W.D. Va. Jan. 5, 2011) ..................................................................................................40

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ..............................................24

*Hoback v. Synchrony Bank*, No. 6:19-cv-18, 2019 WL 2438794 (W.D. Va. June
11, 2019) (Urbanski, J.) ...............................................................................................30

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992)....................................................24

*Hurley v. Bennett*, 176 S.E. 171 (Va. 1934) ...................................................................37

*Hyundai Emigration Corp. v. Empower-Visa, Inc.*, Case No. 1:09cv124(GBL),
2009 WL 10687986 (E.D. Va. June 17, 2009) ................................................................17

*Isle of Wight Cnty. v. Nogiec*, 704 S.E.2d 83 (Va. 2011) ...........................................................37

*Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So. 2d 256 (Fla. Dist. Ct. App. 2000) .................................................................................................................................40

*Jimenez v. Superior Ct.*, 58 P.3d 450 (Cal. 2002).......................................................................26

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648 (Tex. 2018) .................................................................................................................................27

*Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526 (E.D.N.Y. 2015).....................15, 16

*Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561 (S.D. Tex. 2012) *aff'd* 534 F. App'x 266 (5th Cir. (2013) ...............................................................25, 26, 27, 32

*Kylin Network (Beijing) Movie & Culture Media Co. Ltd. v. Fellow*, No. 3:16CV999-HEH, 2017 WL 2385343 (E.D. Va. June 1, 2017) ...........................................17

*Lamont Television Syss., Inc. v. Gates Hudson & Assocs., Inc.*, 943 F.2d 49 (4th Cir. 1991) ...................................................................................................................37

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 2:12-cv-02182, 2016 WL 829210 (E.D. Cal. March 3, 2016).......................................................................................26

*LTD Mgmt. Co., LLC v. Holiday Hosp. Franchising, Inc.*, No. CIV. A. 2:07CV 530, 2008 WL 7281926 (E.D. Va. Mar. 11, 2008) ...................................................................41

*Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001) ...........................................................................22

*Manor House, LLC v. Citizens Property Ins. Corp.*, 277 So.3d 658 (Fla. 5th DCA 2019) ...............................................................................................................................38

*Martini v. JPMorgan Chase Bank, N.A.*, 634 Fed. App'x 159 (6th Cir. 2015) ...........................16

*Mazzei v. Money Store*, 308 F.R.D. 92 (S.D.N.Y. 2015)............................................................36

*McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582 (4th Cir. 2015)........................................................................................................................12

*McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100 (1989) ...................................37

*Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826 (D. Md. 2013)........................22

*Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So.2d 1278 (Fla. 5th DCA 2002) ..................38

*Mustafa v. Pennington*, No. 03-18-00081-CV, 2019 WL 1782993...............................................37

*Myers v. Lee*, No. 1:10cv131, 2010 WL 3745632 (E.D. Va. Sept. 21, 2010) ..............................19

*New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161 (4th Cir. 1994) ................................................................................................20

*Oakland Cal. Towel Co. v. Sivils*, 126 P.2d 651 (Cal. Ct. App. 1942) ..........................................38

*Owen v. Liberty Univ.*, No. 6:19-cv-00007, 2020 WL 1856798 (W.D. Va. Apr. 13, 2020) ........................................................................................................17, 18, 40

*Owens v. BAC Home Loans Servicing, LP*, Civ. A. No. H-11-2742, 2012 WL 1494231 (S.D. Tex. Apr. 27, 2012) ......................................................................27

*Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904 (Tex. App.—Houston 1969) ..............................38

*Payne v. Seterus Inc.*, No. 16-cv-0203, 2016 WL 4521659 (W.D. La. Aug. 26, 2016) ............................................................................................................13, 15

*Perkins v. Silverstein*, 939 F.2d 463 (7th Cir. 1991) ......................................................................5

*Peters v. Aetna, Inc.*, No: 1:15-cv-00109-MR, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016) ..............................................................................................19, 21

*Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46 (Tex. App. 2013) ......................38

*Phillip Morris USA, Inc. v. Duignan*, 243 So.3d 426, 439 (Fla. 2d DCA 2017) ................................................................27

*Plotnik v. Meihaus*, 208 Cal. App. 4th 1590 (2012) ....................................................................38

*Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997 (N.D. Tex. Aug. 29, 2012) ........................................................................................33

*Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84 (Tex. Ct. App. 2007) ..........................26

*Billups v. Retain Merchants Ass'n, Inc.*, 620 F. App'x 211 (5th Cir. 2015) ................................29

*Raquedan v. Volume Servs., Inc.*, No. 18-CV-01139-LHK, 2020 WL 1929343 (N.D. Cal. Apr. 21, 2020) ......................................................................................34

*Reves v. Ernst & Young*, 507 U.S. 107 (1993) ..............................................................................20

*Riggs v. Prober & Raphael*, 681 F.3d 1097 (9th Cir. 2012) ........................................................34

*Rivers v. United States*, No. 6:28-cv-000061, 2020 WL 1443723 (W.D. Va. Feb. 26, 2020) ........................................................................................................22, 23

*Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*, 214 S.E.2d 155 (Va. 1975) ................................38

*Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662 (N.D. Cal. Dec. 20, 2017) ......................................................................................34

*Saechao v. Prime Recovery LLC*, No. 2:19-cv-1723 KJM DB, 2020 WL 2731035
(E.D. Cal. May 26, 2020)..........................................................................................34

*Sakyi v. NationStar Mortg., LLC*, No. 1:18-cv-265, 2018 WL 4568604 (E.D. Va.
Sept. 24, 2018), *aff'd* 770 F. App'x 113 (4th Cir. 2019) .........................................14

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) ......................................20, 22

*Seeger v. Odell*, 115 P.2d 977 (Cal. 1941).............................................................27, 28

*Selby v. Tyco Healthcare Grp., L.P.*, Case No. 6:05-cv-719-Orl-19KRS, 2005 WL
8159747 (M.D. Fla. Dec. 12, 2005), *aff'd* 301 F. App'x 908 (11th Cir. 2008) ................39, 40

*Sensebrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55 (Va. 1988) ..............25, 26

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)....................................40

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489 (4th Cir.
2018) ....................................................................................................................24, 25

*Soc'y Without A Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011) ..............................18

*Solomon v. Am. Web Loan*, No. 4:17cv145, 2019 WL 1320790 (E.D. Va. Mar. 22,
2019) ........................................................................................................................20

*Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969 (2015).........................39

*Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 275 (S.D.N.Y. 2017)..........................16

*Sweely Holdings, LLC v. SunTrust Bank*, 820 S.E.2d 596 (Va. 2018) .........................27

*Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232 (D. Conn. 2017) ............................7

*ThorBear, Inc. v. Crocker Mizner Park, Inc.*, 648 So.2d 168 (Fla. 4th DCA 1994) ...................27

*Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628 (2007); *disapproved on
other grounds by Connor v. First Student, Inc.*, 5 Cal. 5th 1026 (2018) ................................34

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)......................24

*United Food & Comm'l Workers Unions & Empers Midwest Health Benefits
Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ..............................................21

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)...............................................6

*Walker v. Prince George's Cty., Md.*, 575 F.3d 426 (4th Cir. 2009)............................12

*Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012) ................................................21, 23

*Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257 (4th Cir. 2011) ...................................................................................................20

*Wilson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2257-O, 2014 WL 815352 (N.D. Tex. Mar. 3, 2014) ......................................................................33

*Wolfe v. MBNA Am. Bank*, 485 F. Supp. 2d 874 (W.D. Tenn. 2007) ...........................................29

*Xiumin Li v. Genentech, Inc.*, Civil Action No. 3:17-CV-712-B, 2017 WL 6886720 (N.D. Tex. Dec. 20, 2017) ...............................................39

## STATUTES

California Consumer Credit Reporting Agencies Act .....................................................2, 3, 33, 34

California Rosenthal Fair Debt Collection Practices Act ..........................................2, 3, 34, 35, 36

Coronavirus Aid, Relief, and Economic Security Act .......................................................1, 5, 6, 8

Fair Credit Reporting Act ................................................................1, 3, 4, 28, 29, 30, 31, 39

Fair Debt Collection Practices Act ..............................................................2, 32, 34, 35

Florida Consumer Collections Practices Act ..................................................2, 3, 28, 30, 31, 35

Racketeer Influenced and Corrupt Organizations Act ................................2, 19, 20, 21, 22, 23, 24

Real Estate Settlement Procedures Act.......................................2, 3, 12, 13, 14, 15, 16

Tex. Fin. Code §§ 392.001................................................................31, 32

Tex. Fin. Code § 392.303................................................................33

Tex. Fin. Code § 392.304................................................................33

Texas Debt Collections Act .......................................................2, 3, 28, 30, 31, 32, 33

Truth in Lending Act ...........................................................2, 3, 12, 13

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 9(b) .......................................................17, 18, 26, 27

Fed. R. Civ. P. 10(c) ................................................................................................5

Fed. R. Civ. P. 12(b) ...........................................................................................1, 11

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Wells Fargo & Co. (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their motion to dismiss Counts I through III and Counts V through XIV asserted in Plaintiffs' Third Amended Complaint (the "TAC").[1] Defendants move to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b) for the reasons stated herein. These counts fail to state a claim upon which relief can be granted on behalf of any plaintiff. Wells Fargo & Co. additionally moves to be dismissed as a party from the lawsuit due to the lack of any factual allegations supporting a viable claim against it.

## INTRODUCTION

Plaintiffs Gerald Forsburg, Jenna Doctor, Luis and Marisol Castro, and Barbara Prado (collectively, "Plaintiffs")[2] allege that Wells Fargo imposed a forbearance plan on each of their mortgage loans—essentially, temporarily suspending their monthly payment obligations—without their consent. Plaintiffs also seek to challenge, on a class basis, certain mortgage servicing practices that Wells Fargo allegedly adopted during the coronavirus pandemic and accompanying economic turmoil in order to comply with the federal government's Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and to provide immediate financial relief to customers.

---

[1] Defendants do not move to dismiss Count IV, which purports to state a claim under the Fair Credit Reporting Act, although Defendants deny the allegations therein and reserve the right to move to dismiss that count and all defenses with respect to that count.

[2] The TAC additionally includes factual allegations related to an individual named Jorge Goytisolo, III (*see* TAC ¶¶ 219-30), but the complaint does not include that individual in the caption, does not allege that this individual is a plaintiff (*see* TAC ¶¶ 1-4), and does not purport to plead a claim on behalf of that individual. Regardless, Wells Fargo moves to dismiss the claims asserted by all named plaintiffs as set forth herein, although a plain reading of the TAC indicates no claim is asserted by Goytisolo.

Based on this allegedly unsought forbearance, Plaintiffs seek to assert seventeen counts on behalf of themselves; on behalf of a putative nationwide class; and on behalf of Virginia, Florida, Texas, and California subclasses.  The claims alleged include the following: (1) violation of RICO, (2) fraud, (3) violation of the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"), (4) violation of the Fair Credit Reporting Act ("FCRA"), (5) Virginia common law conspiracy, (6) violation of Virginia's business conspiracy statute (Forsburg and the Virginia subclass only), (7) violation of the Texas Debt Collections Act ("TDCA") (Castros and Texas subclass only), (8) violation of the Florida Consumer Collections Practices Act ("FCCPA") (Doctor and Florida subclass only), (9) violation of the California Consumer Credit Reporting Agencies Act ("CCCRAA") (Prado and California subclass only), (10) violation of the California Rosenthal Act (Prado and California subclass only), (11) breach of contract, (12) gross negligence, (13) defamation, (14) attorneys' fees, (15) declaratory relief, (16) preliminary injunction, and (17) permanent injunction.

Counts I through III and Counts V through XIV in the TAC should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a viable claim for relief, for the following reasons, as articulated more fully in the argument that follows:

- **Count I:**  Plaintiffs' RICO claim fails because Plaintiffs do not allege an enterprise, do not allege a pattern of racketeering, and do not allege damages flowing from the purported predicate act.  *See* **Section III, p. 19.**

- **Count II:**  Plaintiffs' common law fraud claim is barred by the economic loss doctrine; the fraud claim is not pleaded with particularity as required by Rule 9(b); and Plaintiffs fail to plead facts to support the element of detrimental reliance.  (As set forth below, the

economic loss doctrine likewise requires dismissal of Count XII for gross negligence.) *See* **Section IV, p. 25.**

- **Count III:** This count, alleging a violation of TILA and RESPA, fails because (a) there is no private right of action; (b) Plaintiffs do not allege that the requisite notice of error was mailed to Wells Fargo before filing suit; and (c) Plaintiffs do not allege cognizable damages. *See* **Section I, p. 12.**

- **Counts V and VI:** The counts alleging Virginia common law conspiracy and Virginia business conspiracy fail because Plaintiffs do not plead with particularity and do not allege an independent tort. *See* **Section II, p. 17.**

- **Count VII:** Plaintiffs' TDCA claim (like several other claims) is expressly preempted by the Fair Credit Reporting Act ("FCRA"). The TDCA claim fails for the additional reason that Wells Fargo is not a "debt collector" subject to the statute. *See* **Section V, p. 28; Section VI, p. 32.**

- **Count VIII:** Plaintiffs' FCCPA claim is expressly preempted by the FCRA, like several other claims. *See* **Section V, p. 28.**

- **Count IX:** Plaintiffs' CCCRAA claim should be dismissed because the TAC does not allege actual damages arising out of the purported violation. *See* **Section VII, p. 33.**

- **Count X:** The California Rosenthal Act claim fails because the theory of "non-consensual forbearance" does not fit within any of the predicate acts identified in the statute as giving rise to liability. *See* **Section VIII, p. 34.**

- **Count XI:** The breach of contract claim fails because there is no privity between Plaintiffs and Wells Fargo, as a mortgage servicer, and because cognizable damages are not alleged. *See* **Section IX, p. 36.**

- **Count XII:**  Plaintiffs' gross negligence claim is barred by the economic loss doctrine, a reason that also supports dismissal of the common law fraud claim (Count II, addressed above).  The gross negligence claim also is preempted by the FCRA (like several other claims).  *See* **Section V, p. 28.**

- **Count XIII:**  Like several other claims, Plaintiffs' defamation claim is expressly preempted by the FCRA.  In addition, the defamation claim fails because the specific statements that were allegedly defamatory are not identified with sufficient particularity.  *See* **Section V, p. 28; Section X, p. 39.**

- In addition, Plaintiffs have improperly asserted declaratory relief, attorneys' fees (**Count XIV**), and injunctive relief as standalone *counts*—when they are only remedies.  Because remedies are not properly pleaded as standalone counts, these counts should be dismissed.

Plaintiffs also improperly name Wells Fargo & Co. as a defendant in this case, where there are no allegations that Wells Fargo & Co. committed any unlawful act and no allegations sufficient to pierce the corporate veil.  Thus, Wells Fargo & Co should be dismissed as a defendant.

For all of these reasons, Counts I through III and Counts V through XIV in the TAC should be dismissed and with prejudice, and Wells Fargo & Co. should be dismissed as a defendant with prejudice.

## FACTUAL ALLEGATIONS

### I.    Wells Fargo's Lending Business and This Lawsuit

Wells Fargo conducts mortgage servicing operations through its Wells Fargo Home

Mortgage division.  (TAC ¶ 10.)  Wells Fargo Bank, N.A.[3] is a subsidiary of Wells Fargo & Co.

(TAC ¶ 7.)  Like other mortgage servicing businesses, Wells Fargo collects the monthly

mortgage payments from borrowers such as the Plaintiffs and applies borrowers' payments

according to the obligations imposed by the borrowers' loan documents and governing law.

(TAC ¶ 62.)  Wells Fargo disburses the collected payments to various parties such as lenders,

investors, taxing authorities, insurers, and other entities.  (TAC ¶ 63.)  Where borrowers cannot

make their monthly mortgage payments, borrowers' accounts may be placed into forbearance,

which delays a borrower's duty to make monthly mortgage payments during the forbearance

period.  (TAC ¶ 65.)

    At the heart of Plaintiffs' TAC is the allegation that Wells Fargo entered borrowers into

forbearance programs without their consent.  (TAC ¶ 54.)  Plaintiffs allege that Wells Fargo

benefits from placing certain loans into CARES Act forbearance as a strategy for limiting

potential loss.  (TAC ¶ 69.)  Plaintiffs base this allegation on the contention that, pursuant to

applicable servicing guidelines, servicers, such as Wells Fargo, may repurchase Ginnie Mae

loans after they have been in CARES Act forbearance status for more than 90 days, and thereby

are released from the obligation to advance principal and interest.  (TAC ¶ 71.)[4]  Similarly,

---

[3] "Wells Fargo" is used throughout to refer to Wells Fargo Bank, N.A.  Wells Fargo & Co.,
which is a separate legal entity, and the parent company of Wells Fargo Bank, N.A., is referred
to using its full name.

[4] Plaintiffs provide no facts relating to the implementation of the CARES Act or its purposes.
However, throughout their TAC, Plaintiffs reference various news articles and extraneous
material referencing Wells Fargo's implementation of the CARES Act.  (TAC ¶¶ 73-75, 119.)
The Court should entirely disregard these references in analyzing this motion to dismiss.  On a
motion to dismiss, the court's review is limited to the allegations of the complaint and written
instruments properly incorporated by reference under Rule 10(c).  *See Goines v. Valley Cmty.
Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (declining to consider incident report quoted in, but
not attached to, the complaint where plaintiff's claims did not turn on the statements contained in
the report).  Rule 10(c) is not "a license to plead [one's] case by exhibit."  *Perkins v. Silverstein*,

Plaintiffs allege that Fannie Mae and Freddie Mac loans carry principal and interest payment advance obligations similar to those for Ginnie Mae loans, with one material difference: servicers' principal and interest advance obligations on Fannie Mae and Freddie Mac loans that receive a CARES Act forbearance terminate after the servicer makes four advances of borrowers' missed principal and interest payments.  (TAC ¶ 76.)  In other words, if Fannie Mae and Freddie Mac loans are placed into CARES Act forbearance, servicers are not required to repurchase those delinquent loans in order to be permitted to cease making payments.  (TAC ¶ 77.)

Plaintiffs contend that, because of the above-referenced benefits, Wells Fargo places Plaintiffs and similarly situated borrowers into forbearance, resulting in harm to Plaintiffs in the form of alleged misrepresentations on their credit reports (TAC ¶¶ 80-82), prevention from obtaining full relief under the CARES Act (TAC ¶ 84), lost opportunity relating to historically low interest rates (TAC ¶ 82), and reputational harm due to a lower credit score (TAC ¶ 87).  A brief summary of the facts as alleged regarding each named plaintiff follows.

## II.     The Allegations Relating to the Named Plaintiffs

### A.     Forsburg's Mortgage Loan

Forsburg resides in Shenandoah County, Virginia and has a mortgage loan backed by the FHA and serviced by Wells Fargo.  (TAC ¶ 95.)  Forsburg's personal liability on the mortgage loan secured by his Shenandoah County home was discharged in a 2016 Chapter 7 bankruptcy.  (TAC ¶ 96.)  Plaintiffs allege that after the 2016 bankruptcy, Forsburg's mortgage loan fell into

---

939 F.2d 463, 467 (7th Cir. 1991).  Moreover, federal courts have ruled that certain documents are not "written instruments" as that term is used in Rule 10(c) such as newspaper articles, media commentaries, and editorial cartoons.  *See id.* at 467 n.2; *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Accordingly, Rule 10(c) does not support the incorporation by reference—or consideration on a motion to dismiss—of newspaper articles and written instruments not forming the basis of Plaintiffs' claims.

default, and he began working with Wells Fargo to obtain a loan modification that would reduce his interest rate and monthly payment, allowing him to catch up on the arrears owing on the mortgage loan.  (TAC ¶ 97.)  According to Plaintiffs, in connection with these efforts, Forsburg accepted a trial modification plan offered by Wells Fargo, which required Forsburg to make certain monthly payments for the months of January, February, and March of 2020.  (TAC ¶ 98.) Plaintiffs state that Forsburg met that payment obligation and was approved for the relevant modification on March 11, 2020.  (TAC ¶¶ 99-100.)

Forsburg's first post-modification payment was due May 1, 2020. (TAC ¶ 101.) Plaintiffs claim that, on March 18, 2020, Wells Fargo sent final modification paperwork to Forsburg, with instructions for executing the documents. (TAC ¶ 104.)  Plaintiffs allege that Forsburg received that paperwork on March 19, 2020, and executed the documents the next day. (TAC ¶¶ 105-06.)  According to Plaintiffs, on or about April 2, 2020, when Forsburg attempted to log into Wells Fargo's online payment portal to confirm the implementation of his mortgage modification, he received a message stating that his mortgage loan had not yet been updated and that Wells Fargo would be in touch.  (TAC ¶¶ 107-08.)

Plaintiffs allege that sometime between March 20 and April 2, 2020, Wells Fargo had placed Forsburg's original, unmodified loan into a three-month forbearance program effective as of April 2020.  (TAC ¶ 109.)  Plaintiffs allege that Forsburg did not request this forbearance and that Wells Fargo did not inform Forsburg that placing the loan into forbearance would result in the termination of the mortgage modification agreement Forsburg allegedly accepted on March 20, 2020.  (TAC ¶¶ 110-11.)  Plaintiffs claim that, ultimately, Forsburg's loan modification was terminated without his consent and that a Wells Fargo representative stated that Wells Fargo had placed all loans that were in the modification process into forbearance status. (TAC ¶¶ 112-16.)

Plaintiffs claim that these actions deprived Forsburg of the opportunity to cure his arrears and lower his interest rate through the modification. (TAC ¶ 124.)

**B.      Doctor's Mortgage Loan**

Doctor resides in Casselberry, Florida and has a loan backed by the FHA and serviced by Wells Fargo. (TAC ¶ 125.) According to Plaintiffs, both Doctor and her husband are employed and have been able to continue making their monthly mortgage payments without interruption and are current on their loan. (TAC ¶ 126.) Plaintiffs claim that around the second week of April 2020, using her Wells Fargo online account, Doctor reviewed information about Wells Fargo's COVID-19 and CARES Act relief but elected not to enroll in the forbearance program. (TAC ¶ 127.) Plaintiffs state that, at some point prior to June 29, 2020, Wells Fargo placed Doctor's mortgage loan account in forbearance status. (TAC ¶¶ 128-29.)

Plaintiffs allege that when Doctor sought to obtain a secured loan to cover medical expenses, Doctor's credit union made a "hard inquiry" with Equifax and received a response indicating that Doctor's mortgage loan was in forbearance. (TAC ¶¶ 130-32.) Plaintiffs claim that because of Doctor's mortgage loan status, which she disputed, and the Equifax report, the credit union would not extend credit to Doctor. (TAC ¶¶ 133-34.) Plaintiffs allege that in subsequent calls with Wells Fargo, Doctor confirmed that her account was contractually current and that she had been automatically put in forbearance. (TAC ¶¶ 135-36.) Plaintiffs allege that despite continuing to make mortgage payments, communicating with Wells Fargo and filing various complaints with the Consumer Financial Protection Bureau and credit reporting agencies ("CRAs"), as of August 6, 2020, Doctor's Equifax report still noted that her mortgage loan account was in forbearance for the months of May and June 2020. (TAC ¶¶ 137-47.)

**C.      The Castros' Mortgage Loan**

The Castros reside in Dallas, Texas and have a loan owned by Fannie Mae that is serviced by Wells Fargo.  (TAC ¶ 148.)  Plaintiffs allege that in late March 2020, while on Wells Fargo's website, Mr. Castro noticed a large box referencing COVID-19 assistance.  (TAC ¶¶ 149-50.)  According to Plaintiffs, Mr. Castro clicked on the box out of curiosity and, upon clicking, received a message informing him that his loan had been enrolled in a forbearance plan. (TAC ¶¶ 151-52.)  At that point, Mr. Castro did not follow up or make any inquiries with Wells Fargo, although he did make his April 2020 mortgage payment, which Wells Fargo accepted. (TAC ¶¶ 153-55.)

Plaintiffs allege that when Mrs. Castro attempted to log into the Castros' Wells Fargo account to make their May 2020 payment, she was unable to do so.  (TAC ¶ 156.)  However, Wells Fargo accepted the payment by telephone.  (TAC ¶ 157.)  According to Plaintiffs, the Wells Fargo representative with whom Mrs. Castro spoke regarding her May 2020 payment informed her that she was unable to make her payment online because the Castros' loan was in forbearance.  (TAC ¶ 158.)  Mrs. Castro requested that the representative remove whatever was preventing her from making online payments, an instruction Wells Fargo followed, and the Castros subsequently made their mortgage payments online for June through August 2020. (TAC ¶¶ 159-60.)

According to Plaintiffs, however, Wells Fargo did not remove the Castros' mortgage loan from forbearance status in April 2020.  (TAC ¶ 161.)  Plaintiffs allege that in May 2020, the Castros attempted to refinance their mortgage loan but were unable to do so because Wells Fargo had reported that the loan was in forbearance status. (TAC ¶¶ 165-66.)  Plaintiffs claim that because their refinancing was prevented, the Castros incurred a late fee for their July 2020 mortgage payment because they anticipated they would not need to make that payment due to

their refinance.  (TAC ¶ 167.)  Plaintiffs state that in a TransUnion credit report, the tradeline for the Castros' mortgage loan indicated that the account was in forbearance and Wells Fargo did not report that the Castros made their April through June 2020 payments.  (TAC ¶ 168.) Plaintiffs allege that the tradeline for the Castro's mortgage on other credit reports similarly fails to note the Castros' April through June 2020 mortgage payments.  (TAC ¶¶ 169-70.)

Plaintiffs allege that the Castros received a letter dated July 9, 2020, stating that Wells Fargo had extended the forbearance period for another three months despite the fact that the Castros did not consent to such an extension.  (TAC ¶ 171.)  Plaintiffs claim that the Castros contacted Wells Fargo to be removed from the forbearance program, but those attempts were unsuccessful.  (TAC ¶¶ 172-74.)

### D.    Prado's Mortgage Loans

Prado resides in Fremont, California and has two mortgage loans that are backed by FHA and serviced by Wells Fargo.  (TAC ¶¶ 176-77.)  As of March 31, 2020, Prado was current on her primary mortgage loan and has made each monthly installment payment on that loan from April through September 2020.  (TAC ¶ 179.)  Prior to April 2020, Prado arranged for payments on her secondary mortgage loan to be automatically drafted from her bank account by Wells Fargo each month. (TAC ¶ 182.)  Plaintiffs claim that on March 28, 2020, Prado called Wells Fargo to inquire about COVID-19 related payment assistance options with respect to her primary mortgage loan only.  (TAC ¶ 183.)  Plaintiffs claim that Prado does not recall requesting forbearance during that call nor authorizing the same.  (TAC ¶ 184.)

Plaintiffs claim that Prado received a letter dated September 4, 2020, in which Wells Fargo referenced that March call and stated that Prado had represented that she would need two months of payments deferred because she did not know when she would be returning to work. (TAC ¶ 185.)  Plaintiffs claim that on September 15, 2020, a Wells Fargo representative

informed Prado that Wells Fargo had placed her primary mortgage loan account into forbearance status on March 20, 2020.  (TAC ¶ 187.)  Plaintiffs claim that Prado made her primary mortgage payments from April through September 2020.  (TAC ¶ 188.)

Plaintiffs claim that both Prado's primary and secondary loans were placed into forbearance status.  (TAC ¶ 189.)  According to Plaintiffs, when Wells Fargo placed Prado's secondary loan into forbearance, it also terminated the automatic electronic monthly payments. (TAC ¶ 191.)  Plaintiffs claim that Prado was unaware that her secondary loan was unpaid from April through June 2020.  (TAC ¶ 192.)

Plaintiffs claim that Prado called Wells Fargo to inquire about COVID-19 related payment assistance in June 2020, and, at that time, Prado informed Wells Fargo that she was not interested in a forbearance.  (TAC ¶¶ 193–94.)  Plaintiffs allege that on July 9, 2020, Prado received an email from Wells Fargo informing her that her forbearance term on her secondary mortgage loan would be extended for 90 days.  (TAC ¶ 196.)  Plaintiffs claim that on July 10, 2020, Prado learned that both of her loans had been placed into forbearance and requested to have those forbearances removed. (TAC ¶¶ 204-07.)

Prado claims that subsequently she received confusing communications regarding her secondary loan and ultimately attempted to pay the requested amount to bring that loan current. (TAC ¶¶ 208-17.)  Plaintiffs claim that, despite that payment, Prado's secondary mortgage loan has not been treated as contractually current.  (TAC ¶ 218.)[5]

---

[5] As noted in footnote 1, the TAC additionally includes superfluous and immaterial factual allegations about an individual named Jorge Goytisolo, III, who is not named as a plaintiff and for whom the TAC does not purport to state a claim, and the Court should therefore ignore these allegations.

11

## LEGAL STANDARD

Rule 12(b)(6) allows a district court to dismiss a complaint for failure to state a claim upon which relief can be granted.  On a Rule 12(b)(6) motion, a court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 271-72 (4th Cir. 2019).  However, "the complaint must state a claim that is plausible on its face, and the Court will not accord the presumption of truth to legal conclusions couched as factual allegations." *Doe v. Sutton-Wallace*, No. 3:18-cv-41, 2019 WL 2061969, at \*2 (W.D. Va. May 9, 2019) (citing *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582 (4th Cir. 2015)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  But a complaint that includes only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not state a claim for relief.  *Twombly*, 550 U.S. at 555.  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (quoting and applying *Iqbal*).  Similarly, complaints fail where they "tender[] 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  And if a plaintiff's allegations fail to "nudge[] [its] claims across the line from conceivable to plausible," the "complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## ARGUMENT

**I.**      **The Claim for Violation of TILA And RESPA (Count III) Should Be Dismissed Because Plaintiffs Lack a Private Right of Action, Do Not Allege Having Sent a Notice of Error, And Do Not Allege Cognizable Damages.**

Although Plaintiffs style Count III as a claim for violation of TILA and RESPA, the allegations in the count itself plainly only seek recovery for a violation of Regulation X, which was promulgated pursuant to RESPA.  Insofar as Plaintiffs intend to assert a claim against Wells Fargo for a violation of TILA, the claim necessarily fails because Plaintiffs only allege that Wells Fargo is a mortgage servicer (TAC ¶¶ 1-2, 9), and mortgage servicers cannot be liable for violations of TILA as a matter of law.  *See Aliff v. Bank of Am., N.A.*, No. 3:16-10119, 2017 WL 424878, at *4 (S.D.W.V. Jan. 31, 2017) ("[T]he courts that have treated this subject have uniformly held that section 1640(a) does not extend liability to loan servicers."); *Payne v. Seterus Inc.*, No. 16-cv-0203, 2016 WL 4521659, at *7 (W.D. La. Aug. 26, 2016) ("[C]ourts uniformly have held that there is no servicer liability under TILA."); *Barnes v. Carrington Mortg. Servs., LLC*, No. 15-cv-6465, 2016 WL 3018693, at *1 (D.N.J. May 24, 2016) (holding § 1640(a) of TILA does not create a private right of action against loan servicers, only creditors).

As for the claim that Wells Fargo violated Regulation X, Plaintiffs assert that Wells Fargo violated 12 C.F.R. § 1024.36(b)(3), which was promulgated pursuant to RESPA, by not crediting an installment payment upon the date of receipt.  (TAC ¶ 253.)  However, Plaintiffs appear to cite the wrong regulatory provision because § 1024.36 ***does not contain*** a (b)(3) subdivision and does not discuss any type of error.  Rather, Plaintiffs appear to have intended to allege that Wells Fargo violated § 1024.3**5**(b)(3), which does exist and does incorporate the obligation to credit an installment payment upon the date of receipt.

Regardless, Plaintiffs' claim still fails for three independent reasons.  First, Plaintiffs do not have a private right of action to enforce this regulation.  Second, Plaintiffs did do not allege that they sent the requisite notice of error before filing a lawsuit.  And third, Plaintiffs do not allege cognizable damages.  Each is a separate basis for dismissing the claim.

**A.      Plaintiffs Have No Private Right of Action for Violation of 12 C.F.R. § 1024.35(b)(3) Under RESPA.**

Although convoluted, Plaintiffs' baseline claim is that Wells Fargo violated Regulation X of RESPA: "[B]ecause 12 C.F.R. § 1024.36(b)(3) [sic] of the Real Estate Settlement Procedures Act . . . specifically identifies a violation of TILA . . . as an error relating to the servicing of a borrower's mortgage loan, failure to comply with TILA's requirement that payments be credited as of the date of receipt *is a RESPA violation* [under 12 C.F.R. § 1024.35(b)(3)]."  (TAC ¶ 306.) Plaintiffs, however, have no private right of action to enforce 12 C.F.R. §1024.35(b)(3).

The only two federal courts in Virginia to rule on the issue have uniformly held that there is no private right of action to enforce 12 C.F.R. § 1024.35 and dismissed claims brought under this regulation accordingly.  *See Sakyi v. NationStar Mortg., LLC*, No. 1:18-cv-265, 2018 WL 4568604, at *2 (E.D. Va. Sept. 24, 2018) (dismissing claim under Regulation X, Section 1024.35 because "[t]here is no explicit right of action provided for in 12 C.F.R. § 1024.35," meaning the "[p]laintiff d[id] not have the ability to bring a claim under Section 1024.35"), *aff'd* 770 F. App'x 113 (4th Cir. 2019)); *Brown v. Bank of N.Y. Mellon*, No. 1:16-cv-194, 2016 WL 2726645, at *2, *4 (E.D. Va. May 9, 2016) (dismissing claim under 12 C.F.R. § 1024.35 because it "do[es] not explicitly provide a cause of action to private individuals").

Therefore, Plaintiffs' claim under 12 C.F.R. § 1024.35(b)(3) of RESPA should be dismissed.

**B.      Plaintiffs' 12 C.F.R. § 1024.36(b)(3) Claim Also Fails Because Plaintiffs Have Not Alleged That They Complied with RESPA's Pre-Suit Requirement of Submission to Wells Fargo of a Notice of Error.**

Plaintiffs' claim under 12 C.F.R. § 1024.35(b)(3) fails for the separate reason that they do not allege that they complied with RESPA's pre-suit requirement of submitting a notice of error to Wells Fargo.

Section 1024.35 only requires a mortgage servicer such as Wells Fargo to comply with the requirements set forth in that provision after receiving a formal notice of error from the borrower that meets certain requirements or after receiving a qualified-written request that asserts an error "relating to the servicing of a mortgage loan." 12 C.F.R. § 1024.35(a). A notice of error must "include[] the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *Id.*

Here, Plaintiffs have not alleged that they submitted either a notice of error or qualified-written report—let alone any facts about when it was sent, to what address, or what the contents of the letter were. Plaintiffs' wholesale failure to allege that they provided such notice or qualified-written reports requires dismissal of the claim. *See Bernstein v. Wells Fargo & Co.*, No. 1:18-cv-02887-RWS-CMS, 2018 WL 7018007, at *13 (N.D. Ga. Nov. 28, 2018) (dismissing claim for violation of 12 C.F.R. § 1024.35 because plaintiff did not allege to have submitted a notice of error—let alone "when it was sent, to what address, or what the contents of the letter or letters were" as is required to state a claim) (citation omitted); *Payne*, 2016 WL 4521659, at *8 (dismissing claim for violation of 12 C.F.R. § 1024.35 where plaintiff did not allege that "he provided [defendant] with a written notice of error that contained all of the information required by § 1024.35"); *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015) (dismissing § 1024.35 claim for failure to plead facts establishing that a notice of error or qualified-written report were sent and noting that "[t]o plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the

letter—that the Court may determine if the letter qualifies as a [qualified-written report] or notice of error").

### C.  Plaintiffs Do Not Allege Cognizable Damages.

Plaintiffs' claim for actual damages consisting of emotional damage, outrage, frustration, and out-of-pocket expenses fails because they provide no allegations of fact that allow for an inference of proximate causation—i.e., that the damages sustained were causally linked to the purported Regulation X violation of not following notice of error response procedures.  Those absent allegations are a sufficient basis for dismissing the claim as well.  *See Martini v. JPMorgan Chase Bank, N.A.*, 634 Fed. App'x 159, 164 (6th Cir. 2015) ("Even if we assume, arguendo, that Chase violated RESPA and that the Martinis' letters qualified as [qualified-written reports], the Martinis fail to adequately plead the required associated damages [because they] allege damages that are due to their inability to pay their mortgage, not the alleged RESPA violation."); *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 254 (D. Conn. 2017) (dismissing RESPA claim because plaintiff did not allege proximate causation); *In re Griffin*, No. 10-22431-RDD, 2010 WL 3928610, at *64 (Bankr. S.D.N.Y. Aug. 31, 2010) ("[S]imply saying that, for example, the servicer's failure to respond to a [qualified-written report] caused damages without specifying how those damages were caused," is not enough to survive a motion to dismiss.).

Plaintiffs' claim for actual damages also fails because they are conclusory and unsupported.  *See Kilgore*, 89 F. Supp. 3d at 539-40 (dismissing as conclusory the plaintiff's assertions that he "suffered financial loss and severe mental anguish and emotional distress of facing the loss or possible loss of his home through foreclosure"); *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 275 (S.D.N.Y. 2017)("Plaintiff's claim to have paid more in mortgage payments than in rent is speculative, inasmuch as there is no allegation in the FAC of any rental opportunity that Plaintiff forwent in favor of continued mortgage payments."); *Tanasi*, 257 F.

16

Supp. 3d at 270 ("The Tanisis' claims for emotional distress damages are limited by RESPA's causation requirement.").

For all of these reasons, Plaintiffs' 12 C.F.R. § 1024.35(b)(3) claim fails as a matter of law and should be dismissed with prejudice.

## II.      The Virginia Common Law Civil Conspiracy And Business Conspiracy Claims (Counts V and VI) Must Be Dismissed Because They Are Not Pleaded with Particularity And Do Not Allege an Independent Tort.

Plaintiff Forsburg's claims for common law civil conspiracy and statutory business conspiracy should be dismissed for two independent reasons.  First, Forsburg has not pleaded either claim with particularity under Rule 9(b).  Second, he has not alleged an independent wrong or tort that occurred.  Therefore, both conspiracy claims fail.

"Business conspiracy, like fraud, must be pleaded with particularity pursuant to Rule 9(b)."  *Kylin Network (Beijing) Movie & Culture Media Co. Ltd. v. Fellow*, No. 3:16CV999-HEH, 2017 WL 2385343, at *4 (E.D. Va. June 1, 2017) (quoting *Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004)).  Likewise, common law conspiracy must be pleaded with particularity.  *Hyundai Emigration Corp. v. Empower-Visa, Inc.*, Case No. 1:09cv124(GBL), 2009 WL 10687986, at *1 (E.D. Va. June 17, 2009) (dismissing statutory and common law conspiracy claims not pleaded with particularity).  Ultimately, "Plaintiff must prove that Defendants 'combined together to effect a preconceived plan and unity of design and purpose.'"  *Owen v. Liberty Univ.*, No. 6:19-cv-00007, 2020 WL 1856798, at *17 (W.D. Va. Apr. 13, 2020) (quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003)).  Here, however, Forsburg's conspiracy claims do not allege "the requisite concert of action and unity of purpose in more than mere conclusory language."  *See Kylin*, 2017 WL 2385343, at *4 (internal quotation marks omitted) (quoting *Bay Tobacco*, 261 F. Supp. at 483).

Where a plaintiff "fails to allege with any specificity the persons who agreed to the alleged conspiracy the specific communications amongst the conspirators, or the manner in which any such communications were made," the plaintiff's "allegations are thus insufficient to support a meeting of the minds by the defendants." *Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (affirming dismissal of conspiracy claim for failure to plead with particularity). Here, Forsburg summarily asserts that Wells Fargo and the Enterprise "constitute a combination of two or more persons." (TAC ¶¶ 287, 292.) But this does not comply with either Forsburg's Rule 9(b) pleading obligations or the Fourth Circuit's standard as articulated in *A Society Without A Name*. That is because Forsburg fails to allege the specifics of the claim, including, for example, the substance of the communications between Wells Fargo and the Enterprise, how those communications occurred, when the communications occurred, or how the communications occurred. *See A Soc'y Without A Name*, 655 F.3d at 347. Accordingly, Forsburg's claims are based on nothing more than a speculative conclusion, untethered to any allegations of ***fact***. *See id.* at 346 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," for purposes of a civil conspiracy claim). *See Owen*, 2020 WL 1856798, at *174 (dismissing conspiracy claims where, "at best, [the plaintiff's] allegations suggest that [the defendants] acted in parallel"); *Darton Eny'tal, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1035-36 (W.D. Va. 2018) (dismissing a claim of civil conspiracy because statements such as "shortly after the agreements were signed and [defendant] representatives inspected [plaintiff] refinery, [defendant] and its agents . . . conspired together to breach the agreements" was a "bare allegation" that "stopped short of the line between possibility and plausibility").

In addition, a common law or business conspiracy claim only arises where "a plaintiff sustains damages as a result of an act that is itself ***wrongful or tortious***." *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) (emphasis added); *Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995). Here, Forsburg has not alleged an underlying tort in Virginia that can survive this motion to dismiss for the reasons described in Sections IV and V, which address why Plaintiffs' fraud and gross negligence claims should be dismissed. Because Plaintiff's TAC does not assert an independent tort or other wrong, Plaintiff has not stated a claim for either common law conspiracy or business conspiracy and both claims should therefore be dismissed.

### III.     Plaintiffs' RICO Claim (Count I) Should be Dismissed Because the TAC Does Not Adequately Allege an Enterprise, a Pattern of Racketeering Activity, or Injury.

Plaintiffs' claim for monetary damages under RICO, 18 U.S.C. § 1964(c), fails to state a claim for three separate and independent reasons. First, Plaintiffs have not sufficiently alleged the existence of an enterprise. Second, Plaintiffs have not adequately alleged a pattern of racketeering activity. And third, Plaintiffs have not adequately alleged injury. For each of these reasons, the RICO claim in the TAC should be dismissed.

### A.     Plaintiffs Have Failed to Plead a Criminal Enterprise As Required to State a Claim for Violation of 18 U.S.C. § 1962(c).

Plaintiffs' RICO claim fails because the TAC does not plead facts that establish the existence of a criminal enterprise. "RICO 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Peters v. Aetna, Inc.*, No: 1:15-cv-00109-MR, 2016 WL 4547151, at *7 (W.D.N.C. Aug. 31, 2016) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). A civil claim under RICO contains four elements: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F.

App'x 257, 258 (4th Cir. 2011) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

Section 1962(c) further limits RICO liability to "a person employed by or associated with any enterprise."  18 U.S.C. § 1962(c); *Myers v. Lee*, No. 1:10cv131 (AJT/JFA), 2010 WL 3745632, at *3 (E.D. Va. Sept. 21, 2010).  An "enterprise" is, in turn, defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity; . . . ."  18 U.S.C. § 1961(4).  An association-in-fact enterprise "is simply a continuing unit that functions with a common purpose," *Boyle v .United States*, 556 U.S. 938, 948 (2009), and its "[l]iability depends on showing that the defendants conducted or participated in the conduct of the '***enterprise's** affairs*,' not just their ***own*** affairs." *Reves v. Ernst & Young*, 507 U.S. 107, 185 (1993) (emphasis in original); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1163-64 (4th Cir. 1994) (finding the alleged RICO person, the International Union, United Mine Workers of America and its employees, was not distinct from the alleged enterprise consisting of the Union along with its local chapters).  An association-in-fact enterprise is "simply a continuing unit that functions with a common purpose."  *Solomon v. Am. Web Loan*, No. 4:17cv145, 2019 WL 1320790, at *6 (E.D. Va. Mar. 22, 2019) (quoting *Boyle*, 556 U.S. at 948).

Here, the TAC baldly asserts that Wells Fargo; its vendors, including Black Knight, Inc.; and "unknown website hosting, design, and tracking vendors, internet service providers, IVR system providers, and mail vendors who either directly assist or provide systems that assist Wells Fargo's false forbearance scheme"; Ginnie Mae, Fannie Mae, and Freddie Mac ("GSEs"); and the trusts that sponsor the GSEs, as well as the investors, sponsors, underwriters, brokers, attorneys, and rating agencies entered into an associated-in-fact enterprise that the TAC dubs the

20

"Wells Fargo False Forbearance Enterprise."  (TAC ¶ 212.)  Monikers aside, the Complaint

alleges nothing more than an ordinary commercial relationship between Wells Fargo & Co.,

Black Knight, the GSEs, and these other unidentified entities and people (collectively, the

"alleged Forbearance Enterprise"), but what is noticeably absent from the TAC are allegations of

fact reflecting that the alleged Forbearance Enterprise constituted a nefarious scheme to violate

laws of the United States.

    Where a complaint alleges a RICO claim but supports it with bare allegations

demonstrating no more than a web of ordinary commercial relationships, like the TAC does here,

courts routinely dismiss those RICO claims for failure to state a claim.  *See, e.g.*, *Davis v.

Hudgins*, 896 F. Supp. 561, 568 (E.D. Va. 1995) (finding that plaintiff's complaint was

"absolutely devoid of any indication that Defendants constituted an 'enterprise,' or functioned

'as a continuing unit'" where it only made conclusory allegations that "disparate parties were

associated in fact") (citation omitted), *aff'd* 87 F.3d 1308 (4th Cir. 1996); *Peters*, 2016 WL

4547151, at *9 (citing *United Food & Comm'l Workers Unions & Empers Midwest Health

Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013)); *Id*. at 855 (noting that

alleged enterprises' "interaction . . . show[ed] only that the defendants had a commercial

relationship, not that they had joined together to create a distinct entity for purposes of

improperly filling [certain medical] prescriptions").

### B.    The TAC Fails to Plead That Wells Fargo Engaged in a Pattern of Racketeering Activity.

    Plaintiffs' RICO claim also fails because the TAC does not plead facts tending to show a

"pattern" of racketeering activity.

    "An act of racketeering under RICO commonly is referred to as a 'predicate act.'"

*Walters v. McMahen*, 684 F.3d 435, 4404 (4th Cir. 2012) (quoting *Maiz v. Virani*, 253 F.3d 641,

671 (11th Cir. 2001)).  A "pattern," then, "is shown when a racketeer commits at least two distinct but related predicate acts."  *Id.* (citing *Sedima, S.P.R.L.*, 473 U.S. at 496 n.14).  The Fourth Circuit has cautioned that "a great many ordinary business disputes arising out of dishonest business practices . . . such as have until the present been redressed by state remedies, could be described as multiple instances of fraud, if one chose to do so," but that those are not necessarily RICO situations.  *See Flip Mortg. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1998).

Furthermore, where "types of fraud are asserted as predicate acts in [a] civil RICO claim, each predicate act must be pled with particularity." *Rivers v. United States*, No. 6:28-cv-000061, 2020 WL 1443723, at *13 (W.D. Va. Feb. 26, 2020) (quotations omitted) (adopted by *Rivers v. Bowman*, 2020 WL 1443137 (W.D. Va. Mar. 24, 2020)).  "'Specifically, the complaint must allege the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he or she obtained thereby.'"  *Id.* (quoting *Mitchell Tracey v. First Am. Title Ins. Co.,* 935 F. Supp. 2d 826, 844 (D. Md. 2013)); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Here, even taken in the light most favorable to Plaintiffs, the TAC's allegations are conclusory.  (TAC ¶ 230 ("Each of the Defendants has committed numerous acts of racketeering activity.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and methods of commission . . . .").)  Plaintiffs provide no details about when the purported racketeering activity occurred, where it occurred, or with respect to whom it occurred.  In fact, the TAC asserts that providing such details "would be impracticable" because the Plaintiffs brought this case as a putative class action (TAC ¶ 279), but that does not excuse Plaintiffs from having to provide ***any*** detail about the scheme as it pertained to ***them***.

Particularly, where, as here, those specific details are required.  *See Rivers*, 2020 WL 1443723, at *13.

In fact, the conduct alleged by Plaintiffs is merely that which would be conducted in the ordinary course of a mortgage servicer's business.  (TAC ¶ 320 (Defendants "transmitted and received by wire, matter and things, including but not limited to loan data, proposed loan modification terms, agreements, email correspondents, monthly mortgage statements, telephone correspondence, credit reporting information, [and] investor reporting.").)  Where the conduct alleged is "the very essence" of a defendant's business, it is not sufficient to support an allegation of fraud.  *Rivers*, 2020 WL 1443723, at *14 (collecting cases).  Accordingly, Plaintiffs' TAC is fatally deficient because it does not adequately plead facts showing a pattern of racketeering activity that nudges the claims across the line from conceivable to plausible.  *See Twombly*, 550 U.S. at 570.

For this reason, as well, the RICO claim should be dismissed.

### C.      The TAC Lacks Sufficient Allegations of Proximate Cause.

Plaintiffs' RICO claim fails for the third independent reason that the TAC lacks allegations showing that any injuries were proximately caused by the purported predicate act of using the mail system to send improper notices because there are no allegations—nor could there be—that the Plaintiffs detrimentally relied upon those purported misrepresentations.

In the Fourth Circuit, the "central question" on proximate cause "is whether the plaintiffs' injuries were the direct result of the alleged predicate act."  *See Walters*, 684 F.3d at 444 (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  A "direct link between an alleged predicate act and a plaintiff's injury" is required because of "(1) the factual difficulty of measuring indirect damages and distinguishing among distinct independent causal factors; (2) the complexity of apportioning damages among plaintiffs to remove the risk of multiple

23

recoveries; and (3) the vindication of the law through compensation of directly-injured victims." *Id.* (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269-70 (1992)). The RICO predicate acts must not only be a "but for" cause of a plaintiff's injury, but the proximate cause of that injury as well. *Id.* (citing *Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010)).

Where the predicate acts alleged are wire and mail fraud based on misrepresentations sent via those vehicles, multiple courts have held that a plaintiff must "demonstrate reliance on a defendant's misrepresentation to establish causation under RICO." *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458-59 (S.D.N.Y. 2014) (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013)). In other words, "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at 'the first step' in the chain of causation." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018).

Here, Plaintiffs indeed allege that the predicate acts at issue are wire and mail fraud. (TAC ¶ 220.) Yet, they plead no facts that "demonstrate reliance" on any purported misrepresentations that caused them injury. Like the plaintiff in *FindTheBest.com*, Plaintiffs here fail to plead that they "took any actions in reliance on any of the Defendants' purportedly false statements" and instead "disputed from the outset" that the representations made in the alleged communications were true. 20 F. Supp. 3d at 459. Plaintiffs cannot claim that they identified the communications as false from the outset, while simultaneously claiming they reasonably relied upon those same, allegedly false, statements.

Plaintiffs attempt to cure this defect by demonstrating a "chain of causation" going through various actors such as "the GSEs, their investors [Wells Fargo's] debt and equity investors, the credit reporting agencies," etc. (TAC ¶ 280.) However, reliance on "a chain of

24

causation that extends significantly beyond 'the first step,' proceeding from" Wells Fargo's conduct is insufficient to satisfy the proximate cause required in the RICO context. *See Slay's Restoration*, 884 F.3d at 494.

Because Plaintiffs have failed to allege that the purported predicate acts described in the TAC proximately caused the injuries alleged in the RICO claim, the RICO claim should be dismissed.

**IV.**    **Plaintiff's Fraud Claim (Count II) And Gross Negligence Claim (Count XII) Should Be Dismissed Because They Are Barred by the Economic Loss Doctrine, And the Fraud Claim Is Not Pleaded with Particularity and Fails to Plead Facts to Support Detrimental Reliance.**

Plaintiffs' claim for common law fraud should be dismissed because the fraud claim is barred by the economic loss doctrine, is not pleaded with particularity, and fails to adequately plead reliance.

**A.**    **The Economic Loss Doctrine Bars the Tort Claims.**

Plaintiffs' common law fraud and gross negligence claims are barred by the economic loss doctrine under Virginia, Texas, and California law.

The economic loss doctrine bars the assertion of tort claims based on conduct that is subject to an existing contract. *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 573 (S.D. Tex. 2012) ("Texas courts have an established state policy against twisting breach of contract claims into tort claims, i.e., the economic loss doctrine bars tort claims when the parties' relationship and their attendant duties arise from a contract.") *aff'd* 534 F. App'x 266 (5th Cir. (2013); *Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 316 (4th Cir. 1998) (applying economic loss doctrine under Virginia law) (citing *Sensebrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 57-58 (Va. 1988)); *Andrews v. Plains All Am. Pipeline, L.P.*, Case No. CV 15-4113 PSG (JEMx), 2017 WL 10543401, at \*6 (C.D. Cal. Aug.

25, 2017) (applying economic loss doctrine under California law). Where a borrower asserts claims against a mortgage servicer surrounding loan modification or forbearance decisions, they "derive[] from the default and enforcement of the indebtedness at issue" and are therefore subject to a contract. *See id.* Here, like in *Kiper*, Plaintiffs' claims relate to a loan modification and purportedly "misleading and inconsistent information" that was delivered in the course of "communicating the status of" loan modifications, like the *Kiper* plaintiff alleged. *See id.*

Virginia, Texas, and California all apply the economic loss rule to claims sounding in negligence. *See Sensenbrenner*, 374 S.E.2d at 56-57 (citations omitted); *Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 90 (Tex. Ct. App. 2007) (citations omitted); *Jimenez v. Superior Ct.*, 58 P.3d 450, 483 (Cal. 2002) (citations omitted). These jurisdictions also apply the economic loss rule to fraud claims where, as here, Plaintiffs are seeking solely economic damages. *See Filak v. George*, 594 S.E.2d 610, 618 (Va. 2004); *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 2:12-cv-02182, 2016 WL 829210, at *8 (E.D. Cal. March 3, 2016) (applying California law); *c.f. LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 245 (Tex. 2014) (while the economic loss rule "does not lend itself to easy answers or broad pronouncements," it operates to forbid recovery in tort for "purely economic losses").

Accordingly, the common law fraud and gross negligence claims fail and should be dismissed.

### B.     The Fraud Claim Is Not Pleaded with Particularity.

Plaintiffs' fraud claim is not pleaded with particularity. Fraud claims must meet the heightened pleading standard of Rule 9(b), under which "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Plaintiffs' fraud by omission argument does not explain when the specific communications were made by Wells

Fargo to Plaintiffs that should have contained the purportedly absent statements, who from Wells Fargo made the statements to Plaintiffs that left out the statements that Plaintiffs purport should have been made, and how these communications were made. *See Kiper*, 884 F. Supp. 2d at 573 (citing *Owens v. BAC Home Loans Servicing, LP*, Civ. A. No. H-11-2742, 2012 WL 1494231, at *6 (S.D. Tex. Apr. 27, 2012)). Nor do Plaintiffs allege facts demonstrating that the purported omissions occurred with the requisite degree of intent. *See id.*

Therefore, Plaintiffs have not satisfied Rule 9(b) and the common law fraud claim should be dismissed for this reason as well.

### C.    Plaintiffs Have Failed to Plead Facts to Support Detrimental Reliance.

Plaintiffs have failed to plead that they justifiably relied on any purportedly fraudulent statement or omission. This is required to state a claim for fraud in Virginia, Texas, Florida and California. *See Sweely Holdings, LLC v. SunTrust Bank*, 820 S.E.2d 596, 605 (Va. 2018); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 652 (Tex. 2018); *Guido v. Koopman*, 2 Cal. Rptr. 2d 437, 440 (1991); *ThorBear, Inc. v. Crocker Mizner Park, Inc.*, 648 So.2d 168, 172 (Fla. 4th DCA 1994). This means that Plaintiffs must have changed their behavior in some way in justifiable reliance on the information. *See CBH Equity, LLC v. Murphy Oil USA, Inc.*, 333 F. Supp. 3d 664, 669 (S.D. Tex. 2018) (under Texas law, "plaintiff must show that it actually relied on the defendant's representation" to state a claim for fraud); *Phillip Morris USA, Inc. v. Duignan*, 243 So.3d 426, 439 (Fla. 2d DCA 2017) (When Florida courts "ask about detrimental reliance, [they] are asking whether the plaintiff would have behaved in the same way had he known the true facts"); *Seeger v. Odell*, 115 P.2d 977, 980 (Cal. 1941) (plaintiff must have "acted in reliance on the misrepresentation"); *Golf Ranch Resort Motel, Inc. v. TarHeel Mortg. Co.*, 341 F. Supp. 846, 851 (E.D. Va. 1972) (same).

The only allegation in the TAC that Plaintiffs actually relied on any statement or omission from Wells Fargo is a conclusory assertion of reliance which the Court cannot accept on face value.  *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  To the contrary, the TAC actually alleges that Plaintiffs "*continued to make their monthly mortgage payments*" after the forbearances were purportedly issued.  *See* TAC at ¶ 297 (emphasis added).  The remainder of Plaintiffs' attempt to plead reliance is nonsensical and unavailing.  *Id.* ("Plaintiffs detrimentally relied upon Wells Fargo's material omissions of fact when they did not inform Plaintiffs promptly that their accounts had been placed in forbearance and Plaintiff Forsburg did not challenge the forbearance to preserve his modification.").  If Plaintiffs did not alter their behavior in any way following the alleged fraud, then they did not act in reliance of the alleged fraud.  This is fatal to their fraud claims, which must therefore be dismissed for this and the other reasons addressed herein.

**V.     Plaintiffs' Texas Debt Collection Act (Count VII), Florida Consumer Collections Practices Act (Count VIII), Gross Negligence (Count XII), And Defamation (Count XIII) Claims Fail Because They Are Expressly Preempted.**

Plaintiffs' state-law claims based on defamation, gross negligence, the TDCA, and the FCCPA are preempted by the FCRA.  The FCRA contains two separate express preemption provisions: 15 U.S.C. §§ 1681h(e) & 1681t(b).  The defamation and gross negligence claims are preempted by the former, and the TDCA and FCCPA claims are preempted by the latter.  Each is addressed below in turn.

**A.     Section 1681h(e) Preempts Plaintiffs' Defamation And Gross Negligence Claims.**

The defamation and gross negligence claims are expressly preempted by 15 U.S.C. § 1681h(e).  Section 1681h(e) provides,

> *[N]o consumer may bring any action or proceeding in the nature of defamation*,
> invasion of privacy, *or negligence with respect to* the reporting of information
> against any consumer reporting agency,  any user of the information, or *any*
> *person who furnishes information to a consumer reporting agency*, . . . based in
> whole or in part on the report except as to false information furnished with malice
> or willful intent to injure such consumer.

(emphases added.)  The express language of this statutory preemption provision covers the

defamation claim.  *See id*; *Hoback v. Synchrony Bank,* No. 6:19-cv-18, 2019 WL 2438794, at *4

(W.D. Va. June 11, 2019) (Urbanski, J.) (holding that § 1681h(e) governs state-law-based

defamation claim).  Then, because a gross negligence claim is "in the nature of . . . defamation,"

the gross negligence claim is also preempted by this provision.  *See id.* at *2; *Edeh v. Equifax*

*Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1016-17 (D. Minn. 2013) (noting that a gross

negligence claim was preempted by 15 U.S.C. § 1681h(e)); *Wolfe v. MBNA Am. Bank*, 485 F.

Supp. 2d 874, 887 (W.D. Tenn. 2007).  Therefore, both claims are preempted unless the

Plaintiffs have plausibly alleged that Wells Fargo acted with "malice or willful intent to injure

such consumer."  15 U.S.C. § 1681h(e).

 While the TAC does indeed contain three discrete allegations of malice and willfulness,

those allegations are wholly conclusory and do not plausibly allege that Wells Fargo acted with a

sinister or corrupt motive or with reckless disregard or indifference to the truth.  *See Hoback*,

2019 WL 2438794, at *4.  As this Court has explained, "Courts assessing defamation claims

brought in the context of credit reporting errors and FCRA violations tend to permit such claims

to proceed to discovery if plaintiffs assert any allegations beyond 'merely reciting the legal

standard.'"  *Id.* (quoting *Billups v. Retain Merchants Ass'n, Inc.*, 620 F. App'x 211, 213 (5th Cir.

2015)).

 Here, there are no allegations that do more than "merely recite the legal standard."  For

instance, there are no allegations that Forsburg or the Castros ever contacted Wells Fargo to ask

that the information about their forbearance status stop being reported to the credit agencies.  As for Doctor and Prado, although there are allegations that she contacted Wells Fargo about correcting the reporting of her forbearance status to the credit reporting agencies (TAC ¶ 133), the allegations make clear that Wells Fargo had ***actually placed her*** in a state of forbearance— i.e., they were not mandating payment of her monthly payments and were instead affording her a grace period.  While the parties may dispute the propriety of that course of action, the allegations do not show that Wells Fargo acted with ***malice*** or ***willfulness*** in publishing ***false*** information to the credit report agencies.  At most, they allege mere negligence, which does not rise to the level of malice under Virginia law.  *See Hoback*, 2019 WL 2438794, at *4 (describing the applicable state malice standard in Virginia as, at a minimum, "gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff") (citation omitted).

Accordingly, the defamation claim is not pleaded in the necessary way to permit it to escape dismal on the grounds of preemption.

### B.       Section 1681t(b) Preempts the TDCA And FCCPA Claims.

FCRA contains a second express preemption provision that defeats Plaintiffs' TDCA and FCCPA claims because they are premised on the same allegations giving rise to the FCRA claim.

Subject to a few immaterial exceptions, 15 U.S.C. § 1681t(b)(1)(F) provides, "No requirement or prohibition may be imposed under the laws of any State—(1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, . . . ."  This district, along with several other courts in the Fourth Circuit, have held that § 1681t(b) "only applies to state statutory claims," whereas § 1681h(e) only preempts state common law claims.  *See Hoback*, 2019 WL 2438794, at *3 (agreeing with other courts in the Fourth Circuit that § 1681t(b)(1)(F) preempts state statutory claims); *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10cv670,

2012 WL 5404084, at *18 (E.D. Va. Nov. 5, 2012) (explaining that seven of the nine districts in the Fourth Circuit have adopted this interpretation of the import of § 1681t(b)(1)(F) vis-à-vis § 1681h(e)).

Here, Plaintiffs' TDCA and FCCPA claims are premised on the same allegations giving rise to the FCRA claim—primarily that Wells Fargo improperly furnished false information to the credit reporting agencies.  (TAC ¶¶ 306, 308, 314-16.)  Specifically, the TDCA claim alleges that Wells Fargo "misrepresented to the credit reporting agencies" that the Castros' mortgage loan account "was in forbearance status when" the Castros had not consented to forbearance. (TAC ¶ 306.)  The FCCPA claim, meanwhile, alleges that Wells Fargo "made representations to the credit reporting agencies that the mortgage loan accounts of the members of the Florida class were in forbearance when the members of the Florida class did not request or consent to the forbearance, and Wells Fargo knew that the information it reported to the credit reporting agencies regarding the Florida class members' mortgage loan accounts was false."  (TAC ¶ 315.) Plainly, these allegations "relat[e] to the responsibilities of persons who furnish information to consumer reporting agencies."  *See* § 1681t(b)(1)(F).

Therefore, the TDCA and FCCPA claims are expressly preempted as well and should be dismissed.  *See Frye v. Cap. One Auto Fin.*, No. 1:15-CV-20530, 2015 WL 3540445, at *1-*2 (S.D. Fla. June 3, 2015) (holding that the FCRA preempts FCCPA claims based on furnishing information to credit reporting agencies or failing to take FCRA-mandated steps upon being notified of a dispute); *Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 883 (S.D. Tex. 2013), *on reconsideration*, No. 6:11-CV-00047, 2014 WL 585403 (S.D. Tex. Feb. 14, 2014) ("[A] state-law claim based on a defendant's conduct in furnishing inaccurate information to a consumer reporting agency is preempted by the FCRA.").

31

**VI.** **The TDCA Claim Should Be Dismissed Because Wells Fargo Is Not a Debt
Collector.**

In addition to being preempted by the FCRA, Plaintiffs' claim for alleged violation of the

TDCA, Tex. Fin. Code §§ 392.001 *et al.*, also fails because Wells Fargo is not a "debt collector"

under the statute.  For each of these reasons, the statute does not apply to the allegations in this

case.

To state a claim under the TDCA, a plaintiff must allege that (1) the debt at issue is a

consumer debt; (2) the defendant is a "debt collector" within the meaning of the TDCA; (3) the

defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was

committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's

wrongful act.  *Cruz v. Bank of Am., N.A.,* No. 3:19-CV-340-M-BN, 2020 WL 4561855, at *5

(N.D. Tex. July 10, 2020), *R & R adopted by* 2020 WL 4569042 (N.D. Tex. Aug. 7, 2020).

For purposes of the second element, a "debt collector" is "a person who directly or

indirectly engages in debt collection and includes a person who sells or offers to sell forms

represented to be a collection system, device, or scheme intended to be used to collect consumer

debts."  Tex. Fin. Code § 392.001(6).  Here, Wells Fargo is only alleged to be the mortgage

*servicer* of Plaintiffs' debt; it is not alleged to have directly *lent* money to Plaintiffs.  (TAC ¶¶ 6,

62, 71.)  Nor is Wells Fargo alleged to engage in "debt collection," which is defined as "an

action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are

due or alleged to be due a creditor."  Tex. Fin. Code § 392.001(5).  On the contrary, Wells Fargo

is alleged only to passively receive payments from borrowers (TAC ¶¶ 62-63)—not to

affirmatively track down debtors to secure repayment.  *See Kiper*, 884 F. Supp. 2d at 572

(dismissing TDCA claim and holding that "a debt collector" under the TDCA "tracks the

definition of a 'debt collector' in the Fair Debt Collection Practices Act, which ***does not include***

a consumer's . . . ***mortgage servicing company***" (emphases added) (citing *Cervantes v. U.S. Bank Nat'l Ass'n*, Civ. A. No. 3:12-CV-0661-D, 2012 WL 1605558, at \*4 (N.D. Tex. May 8, 2012) (collecting cases)).[6]

Accordingly, the TDCA claim fails and should be dismissed.

**VII.    Plaintiffs' CCCRAA Claim Should Be Dismissed Because the TAC Fails to Allege Actual Damages.**

Prado's claim under § 1785.25(a) of the CCCRAA fails because the TAC fails to allege actual damages, a necessary element of any CCCRAA claim.

Section 1785.25(a) provides "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." To prevail on a CCCRAA claim, a "[p]laintiff must prove that (1) Defendant is a 'person' under the CCCRAA, (2) Defendant reported information to a consumer reporting agency, (3) the information reported was inaccurate, (4) Plaintiff was harmed, and (5) Defendant knew or should have known the information was inaccurate." *Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at \*14 (N.D. Cal. Dec. 20, 2017).

---

[6] In addition, Plaintiffs improperly allege in vague fashion that "Defendants' failure to provide any meaningful disclosure relating to the terms and consequences of being enrolled in the COVID-19 forbearance program" was deceptive, but they do not cite a specific section of the TDCA. (TAC ¶ 271.) The failure to identify the specific provision allegedly violated warrants dismissal as well. *See, e.g.*, *Wilson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2257-O, 2014 WL 815352, at \*7 (N.D. Tex. Mar. 3, 2014) (finding dismissal of TDCA claim warranted where plaintiff did not identify the specific provisions of §§ 392.303(a) or 392.304(a) or a particular "prohibited practice" that defendant allegedly violated); *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at \*6 (N.D. Tex. Aug. 29, 2012) (dismissing TDCA claim where plaintiffs neither pointed to specific provisions that defendant allegedly violated, nor supplied sufficient facts to state a plausible claim for relief).

Here, Prado's CCCRAA claim suffers from a complete absence of meaningful allegations to support the damages element.  It is well-settled that "[a]bsent actual damages, a CCCRAA claim fails a matter of law."  *Banga v. Experian Info. Sols., Inc.*, No. C 09-04867 SBA, 2013 WL 5539690, at \*7 (N.D. Cal. Sept. 30, 2013); *see also Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 637-39 (2007) (affirming summary judgment on CCCRAA claim where plaintiffs failed to raise a triable issue of fact as to damages), *disapproved on other grounds by Connor v. First Student, Inc.*, 5 Cal. 5th 1026, 958 (2018); *Raquedan v. Volume Servs., Inc.*, No. 18-CV-01139-LHK, 2020 WL 1929343, at \*2 (N.D. Cal. Apr. 21, 2020) (puzzling over why class action plaintiffs asserted a CCCRAA claim when they conceded they "suffered no tangible economic injury").  The TAC contains no allegations of ***fact*** showing that Prado was actually damaged by any purported reporting of the forbearance to the CRAs.  Because the TAC contains no allegations of fact showing that Prado was harmed by any reporting of information by Wells Fargo to the CRAs, the TAC lacks allegations to plead the damages element of a CCCRAA claim as required under California law.  Accordingly, this claim should be dismissed.

## VIII.   Plaintiffs' California Rosenthal Act Claim Should Be Dismissed Because the Concept of Non-Consensual Forbearance Does Not Fit Within Any of the Prohibited Practices Listed in the Fair Debt Collection Practices Act.

California's state analog to the Fair Debt Collection Practices Act ("FDCPA") is called the "Rosenthal Act or RFDCPA" and it "mimics or incorporates by reference the FDCPA's requirements and makes available the FDCPA's remedies as independent violations."  *Saechao v. Prime Recovery LLC*, No. 2:19-cv-1723 KJM DB, 2020 WL 2731035, at \*3 (E.D. Cal. May 26, 2020) (quoting *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012)).

The Rosenthal Act's purpose is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts."  Cal. Civ. Code § 1788.1(b).  To state a claim under the Rosenthal Act, the plaintiff must establish that: (1) he/she is a

"consumer"; (2) who was the object of a collection activity arising from a "debt"; (3) the defendant is a "debt collector"; and (4) the defendant violated one or more sections of 1692b to 1692j of the federal FDCPA. *Flores v. Collection Consultants of Cal.*, No. SACV 14-771-DOC (RNBx), 2015 WL 4254032, at *4 (C.D. Cal. Mar. 20, 2015) (citations omitted).

In this instance, the TAC's Rosenthal Act claim fails on the fourth element—the absence of any predicate FDCPA violation. Section 1692e of the FCPA generally prohibits the use of "false, deceptive, or misleading representation or means" to collect a debt. It enumerates sixteen examples of conduct that would violate the statute. The following table identifies the specific FDCPA predicate statutes alleged in the TAC:

| FDCPA Predicate Subsection | Relevant Statutory Language |
| --- | --- |
| 15 U.S.C. § 1692e | This section provides, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." |
| 15 U.S.C. § 1692e(2)(A) | This subsection bars "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." |
| 15 U.S.C. § 1692e(5) | This subsection bars "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." |
| 15 U.S.C. § 1692e(10) | This subsection bars "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." |
| 15 U.S.C. § 1692f | This subsection bars "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." |

The TAC unsurprisingly struggles to place its allegations within any of these predicate provisions. Allegedly putting Prado into a forbearance plan without her consent simply does not fit into any of the enumerated examples. Indeed, putting someone in a forbearance plan relieving that person of the obligation to make monthly payments is the opposite of debt collection. *See Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387-89 (7th Cir. 1998) (noting that

correspondence regarding a forbearance agreement is not actionable under the FDCPA because it is not debt collection).  The TAC's attempt to cherry-pick a few enumerated predicate subsections to fit this fact pattern is unconvincing.  Consequently, the fourth element of the Rosenthal Act claim is not adequately alleged and this claim should be dismissed.

IX.    **Plaintiffs' Breach of Contract Claim Must Be Dismissed Because There Is No Privity Between Wells Fargo And Plaintiffs, and Plaintiffs Fail to Identify Cognizable Damages.**

Plaintiffs' breach of contract suffers from two fatal flaws, both of which require dismissal.  First, Plaintiffs' cannot assert a breach of contract claim in this action because there is no privity of contract between the Plaintiffs and Wells Fargo, which was only a servicer of the mortgage.  Second, even if they could bring a breach of contract claim, it would necessarily fail because Plaintiffs do not—and cannot—allege cognizable damages traceable to a purported contractual breach.  Both defects require dismissal.

A.    **There Is No Privity of Contract Between the Parties**

"[L]oan servicers are not in privity of contract with mortgagors where the servicers did not sign a contract with the mortgagors or expressly assume liability."  *Englert v. Nationstar Mortg., Inc.*, Case No. 1:15-cv-303, 2015 WL 9275662, at *3 (E.D. Va. Dec. 18, 2015) (citing *Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015)); *see also Brandon v. Wells Fargo Bank, N.A.*, No. 13-18-00393-CV, 2020 WL 2776714, at *14 (Tex. App. Ct. May 28, 2020) (reversing a trial court's decision to allow breach of contract claim to proceed because there is no privity between a mortgage servicer and a borrower); *Bank of Am., N.A. v. Zaskey*, No. 9:15-cv-81325, 2016 WL 2897410, at *6-8 (S.D. Fla. May 18, 2016) (dismissing breach of contract claim asserted by mortgage against mortgage servicer because there is no privity between such parties); *Conder v. Home Savings of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) (dismissing

breach of contract claim against mortgage servicer because privity does not exist between loan servicer and borrower).[7]

Here, there is no allegation, nor could there be an allegation, that any contract existed directly between any of the Plaintiffs and Wells Fargo because Wells Fargo operated strictly as a loan *servicer* and therefore did not sign a contract directly with the borrower to loan the borrower money or otherwise.  Because each of the applicable state's laws hold that privity does not exist in the usual borrower-mortgage servicer context, like here, Plaintiffs' breach of contract claim against Wells Fargo is not cognizable and should be dismissed.

**B.      Plaintiffs Fail to Identify Cognizable Damages.**

The elements of a breach of contract action are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004) (citations omitted); *see also Deauville Hot. Mgmt., LLC v. Ward*, 219 So.3d 949, 953 (Fla. 3d DCA 2017) (same); *Mustafa v. Pennington*, No. 03-18-00081-CV, 2019 WL 1782993, at *3; (Tex. App. 2019) (same); *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989) (same).

"As a general rule . . . , damages for breach of contracts are limited to the pecuniary loss sustained."  *Isle of Wight County v. Nogiec*, 704 S.E.2d 83, 86 (Va. 2011) (citations omitted); *see also Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002) ("An award of damages for breach of contract is intended to place the injured party in the

---

[7] In addition, Plaintiff Forsburg could not maintain a breach of contract claim, even if privity did exist. because the SAC expressly alleges that Forsburg defaulted.  (TAC ¶ 97.)  "[U]nder Virginia law, as generally, a party who is in default cannot sue for breach or seek to enforce a contract."  *Lamont Television Syss., Inc. v. Gates Hudson & Assocs., Inc.*, 943 F.2d 49 (4th Cir. 1991) (citing *Hurley v. Bennett*, 176 S.E. 171 (Va. 1934).

position he or she would have been in had the breach not occurred"); *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 64 (Tex. App. 2013) ("To recover damages for breach of contract, a plaintiff must show that he suffered pecuniary loss as a result of the breach."); *Oakland Cal. Towel Co. v. Sivils*, 126 P.2d 651, 652 (Cal. Ct. App. 1942) (Damages for breach of contract limited to "the amount which will compensate the party aggrieved for the detriment proximately caused by the breach").  Damages for "mental suffering" are not allowed.  *Harris v. Richmond Motor Co., Inc.*, 26 Va. Cir. 403 (1974); *Crenshaw v. Sarasota Cnt. Pub. Hosp. Bd.*, 466 So.2d 427, 429 (Fla. 2d DCA 1985) (no recovery "for mental distress caused by a breach of contract"); *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904, 906 (Tex. App. 1969) ("If no physical harm to the person of the plaintiff is disclosed, no right of recovery exists by virtue of mental suffering alone."); *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1601 (2012) ("Generally, damages for mental suffering and emotional distress are not compensable in contract actions") (citations omitted).  While "direct damages" are compensable, "consequential damages are those which arise from the intervention of 'special circumstances' not ordinarily predictable" and are only compensable if they were "within the contemplation of both contracting parties."  *Roanoke Hops. Ass'n v. Doyle & Russell, Inc.*, 214 S.E.2d 155, 160 (Va. 1975); *see also Bevins v. Partridge, Jones & Assocs., Ltd.*, 22 Va. Cir. 334 (1990); *Manor House, LLC v. Citizens Prop. Ins. Corp.*, 277 So.3d 658, 661 (Fla. 5th DCA 2019) (Consequential damages only recoverable if they "were in contemplation of the parties at the inception of the contract") (citations omitted); *Basic Cap. Mgmt. v. Dynex Com., Inc.*, 348 S.W.3d 894, 901 (Tex. 2011) ("Consequential damages are those that result naturally . . . from the defendant's wrongful acts.  They are not recoverable unless the parties contemplated them at the time they made the contract[.]") (citations omitted); *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 989 (2015)

(Consequential damages are "recoverable only upon a showing that they were foreseeable and within the contemplation of the parties at the time the contract was made[.]").

Plaintiffs allege that Wells Fargo breached the notes and deeds of trusts for the Plaintiffs' mortgage loans, and that in doing so, caused Plaintiffs to suffer "actual damages." (TAC ¶¶ 396, 400.)  The TAC does not allege how Wells Fargo's alleged breach of the notes and deeds of trusts actually harmed the Plaintiffs—not even conceptually, and certainly not concretely.  For this additional reason, Plaintiffs' claim for breach of contract should be dismissed.

**X.**     **Plaintiffs' Defamation Claim Fails Because They Do Not Allege the Specific Statements Made, to Whom They Were Made, Or When They Were Made.**

The Castros and Doctor allege a defamation claim against Wells Fargo for providing purportedly false information to the CRAs arising out of their placement into the forbearance programs.  Beyond being preempted by the FCRA, however, the defamation claim also fails for lack of sufficient definiteness.

Here, the Castros' and Doctor's defamation claim fails because they do not plead the precise statements at issue that they claim were defamatory.  *See Selby v. Tyco Healthcare Grp., L.P.*, Case No. 6:05-cv-719-Orl-19KRS, 2005 WL 8159747, at *2 (M.D. Fla. Dec. 12, 2005) (dismissing defamation claim because the complaint did "not identify with any degree of particularity the statements that [p]laintiff believes to be base or defamatory"), *aff'd* 301 F. App'x 908 (11th Cir. 2008); *see also Xiumin Li v. Genentech, Inc.*, Civil Action No. 3:17-CV-712-B, 2017 WL 6886720, at *12 (N.D. Tex. Dec. 20, 2017) (dismissing defamation claim where complaint did not identify the "specific statements" that were allegedly false).  Nor do they identify the person to whom the statements were made at each of the CRAs.  *See Selby*, 2005 WL 8159747, at *2 (citing *Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So.2d 256, 257 (Fla. Dist. Ct. App. 2000) (dismissing defamation claim for failure to "identify the person or

persons to whom the allegedly defamatory statements were made"). For these reasons, the claim contains a fatal defect and should be dismissed.

**XI.** **Plaintiffs' Claims for Attorneys' Fees, Declaratory Relief, And Injunctive Relief Should Be Dismissed Because Remedies Are Not Properly Pleaded as Independent Claims.**

Plaintiff's separate claims for attorneys' fees, declaratory relief, preliminary injunction, and permanent injunction should all be dismissed for the same fundamental reason: they are not causes of action but rather ***remedies***.

Federal courts routinely dismiss improperly pleaded claims, like requests for declaratory judgment, that are in fact mere remedies and not actual claims that constitute bases for liability. *See, e.g.*, *Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017) (affirming the district court's dismissal of remedies couched as independent causes of action); *Owen*, 2020 WL 1856798, at *22 (granting motion to dismiss because a declaratory judgment is a remedy, not a cause of action) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 661 (1950)); *Healy v. Chesapeake Appalachia, LLC*, No. 1:10-CV-00023, 2011 WL 24261, at *16 (W.D. Va. Jan. 5, 2011) (same).

Similarly, it is well established that "injunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action." *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 862 (E.D. Va. 2016) (quoting *Dwoskin v. Bank of Am.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012)); *see also Blankenship*, 850 F.3d at 640 (4th Cir. 2017) ("Injunctive relief is a remedy, not a cause of action."). And plainly, a request for attorney's fees is also a form of remedy—not a claim.

For these reasons, Plaintiff's claims for attorney's fees, declaratory relief, and injunctive relief are not proper claims and should be dismissed.

**XII.**  **Wells Fargo & Co. Should Be Dismissed Because Plaintiff's Allegations Have Not Pleaded Facts to Pierce the Corporate Veil.**

In addition to seeking dismissal of the Counts specified above, Wells Fargo & Co. seeks its dismissal from the lawsuit in its entirety on the ground that Plaintiffs have not pleaded that Wells Fargo & Co. exercises undue control over Wells Fargo Bank for the purpose of defrauding a party dealing with Wells Fargo, N.A.  Generally, "a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  The TAC does not allege any facts that support piercing the corporate veil and disregarding that general principal. A veil piercing claim requires a plaintiff to plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors. *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003); s*ee also C.F. Tr., Inc., v. First Flight Ltd. P'ship*, 306 F.3d 126 (4th Cir.2002) (applying Virginia law); *LTD Mgmt. Co., LLC v. Holiday Hosp. Franchising, Inc.*, No. CIV. A. 2:07CV 530, 2008 WL 7281926, at *7 (E.D. Va. Mar. 11, 2008) ("[A] court may 'pierce the corporate veil' and hold a parent liable for the acts of a subsidiary in very limited situations such as when the parent exercises undue control over the subsidiary in order to defraud a party dealing with the subsidiary.").

Plaintiffs do not sufficiently allege any facts suggesting that Wells Fargo & Co. was directly involved in the COVID forbearance decisions.  Therefore, Wells Fargo & Co. should be dismissed as a defendant.

## CONCLUSION

For the foregoing reasons, Counts I through III and V through XIV in Plaintiffs' TAC should be dismissed and Wells Fargo & Co. should be dismissed as a party, each with prejudice.

Dated: May 12, 2022                Respectfully submitted,

By: */s/ William C. Mayberry*

Michael E. Hastings (VSB No. 36090)
J. Benjamin Rottenborn (VSB No. 84796)
Justin E. Simmons (VSB No. 77319)
Woods Rogers PLC
P.O. Box 14125
Roanoke, Virginia 24011
Phone: (540) 983-7600
Fax: (540) 983-7711
mhastings@woodsrogers.com
brottenborn@woodsrogers.com
jsimmons@woodsrogers.com

William C. Mayberry (VSB No. 33584)
Amy P. Williams (pro hac vice pending)
Andrew D. Atkins (pro hac vice pending)
Troutman Pepper Hamilton Sanders LLP
301 South College Street, Suite 3400
Charlotte, NC 28202
Tel: (704) 916-1501
E-mail: bill.mayberry@troutman.com

John C. Lynch (VSB No. 39267)
Troutman Pepper Hamilton Sanders LLP
222 Central Pak Ave., Suite 2000
Virginia Beach, VA 23462
Tel: (757) 687-7765
Fax: (757) 687-1504

*Attorneys for Defendants Wells Fargo & Co.*
*and Wells Fargo Bank, N.A.*